IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


JEANNETTE L. PARKER,

       Plaintiff,

vs.                                                           CASE NO. 1:11-cv-55-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

       Defendant.

_____/


## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income benefits ("SSI"). (Doc. 1). The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions. (Docs. 13 and 14.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

### I. PROCEDURAL HISTORY

On January 9, 2007, Plaintiff protectively filed an application for supplemental security income, alleging a disability onset date of April 19, 2007. (R. 90-96.) Plaintiff's application was denied initially on April 20, 2007 and upon reconsideration on December 20, 2007. (R. 57-59, 61-63.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted Plaintiff's administrative hearing on October 5, 2009. (R. 29-51.) The ALJ issued a decision unfavorable to

Plaintiff on February 3, 2010.  (R. 14-24.)  Plaintiff's request for review of the hearing decision by the Appeals Council was denied on February 24, 2011.  (R. 1-5.)  Plaintiff then appealed to this Court.  (Doc. 1.)

## II. FINDINGS OF THE ALJ

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of January 9, 2007.  He found at Step 2 of the sequential evaluation that Plaintiff had the following severe impairments: asymptomatic human immunodeficiency virus (HIV); hepatitis C; and a seizure disorder.  (R. 19.)  The ALJ concluded, however, that Plaintiff's mental impairments (alleged depression, memory loss, PTSD) were not severe because: (1) the medical evidence fails to show the presence of severe mental impairments; (2) Plaintiff has never received any psychiatric or psychological treatment; (3) Plaintiff's mental impairments impose only mild functional limitations and no episodes of decompensation.  (R. 19-20.)  The ALJ found that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the Commissioner's Listings because the medical evidence did not support listing-level severity and no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment.  (R. 20-21.)  The ALJ concluded that Plaintiff had the residual functional capacity to perform the full range of light work.  (R. 23.)  The ALJ concluded that Plaintiff was capable of performing her past relevant work as an office worker, veterinarian assistant, cleaner, and telemarketer, and that this past relevant work did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity.  (R. 23-24.)

Accordingly, the ALJ concluded that Plaintiff had not been under a disability from January 9, 2007 through the date of the administrative hearing.  (R. 24.)

### III. ISSUE PRESENTED

The issue presented by Plaintiff is whether the ALJ erred at Step 2 by finding that Plaintiff's mental impairments were non-severe.

### IV. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

*Case No. 1:11-cv-55-MP-GRJ*

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V.  SUMMARY OF THE RECORD

### A.  Personal Background

Plaintiff was 33 years old at the time of the administrative hearing and decision. (R. 33.)  She completed her GED and some technical training for her veterinarian assistant work.  (R. 34.)  She has worked as an office worker, veterinarian assistant, cleaner, and telemarketer.  (R. 23-24, 34.)  She alleges disability due to Hepatitis C,

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

HIV, epilepsy, memory problems, fatigue, body aches, rash, and recurrent urinary tract infections.  (R. 108, 145, 179.)

### B. Mental Impairments

Medical records from the period of time prior to Plaintiff's alleged onset date of April 19, 2007 were reviewed by the ALJ.  An initial psychological screening was conducted on August 20, 2002 by the Department of Corrections.  Plaintiff reported no history of psychiatric hospitalization or psychotropic medications.  She reported trouble sleeping, nightmares, and crying daily "for hours."  She reported a history of daily crack cocaine use from age 14 until her most recent arrest; she also reported that her mother had recently been murdered.  Referral for psychiatric evaluation was recommended.  (R. 265-267.)   A September 11, 2002 DOC service plan indicated diagnoses of posttraumatic stress disorder, cocaine dependence, HIV positive, and adjustment to incarceration.  She reported a depressed mood manifested by crying spells, isolation, nightmares, excessive sleepiness, apathy, and poor appetite.  (R. 249-250.)  On October 11, 2003, Plaintiff reported improved appetite and reduction in nightmares, isolation, crying spells, and apathy.  (R. 248.)  On January 17, 2003, Plaintiff reported reduction in nightmares, isolation, and PTSD symptoms.  She experienced crying spells once a week.  (R. 247.)  On August 20, 2003, Plaintiff reported that her anxiety symptoms were reduced.  (R. 246.)

William E. Benet, Ph.D., Psy.D., performed a psychological evaluation and consultative examination of Plaintiff on March 28, 2007.  Plaintiff reported that she was diagnosed with HIV at age 15 following a rape the year before, and that she continues

to have nightmares about the assault. She reported feeling depressed "off and on" with frequent crying spells and passive suicidal thoughts; she also reported feeling tired and having memory problems. Plaintiff said she was treated for depression in prison in 2001-2003 with no mental health care since then. She reported a long history of crack cocaine use resulting in imprisonment from 2001-2003 for cocaine possession as well as several months in the Alachua County Jail during 2006 for cocaine possession.

Plaintiff said that she has not worked since 2000 and now lives with her mother and step-father in Old Town. She reported that she spends most of her time sleeping but enjoys listening to music. She prepares meals, does chores, and attends to her personal care needs. Dr. Benet's mental status exam indicated that Plaintiff was alert, oriented, and healthy looking and she was appropriately dressed and groomed with good eye contact and normal gait and motor activity. Plaintiff was friendly and cooperative but appeared sad and depressed. She was "very articulate" with organized and goal-directed thinking, appropriate affect, and adequate attention and concentration. Her short-term memory and verbal reasoning were average; intermediate memory was fair. She had a poor fund of knowledge and her general intellectual ability was estimated to be low-average to average. Her judgment and insight were adequate. No psychological tests were administered.

Dr. Benet concluded that Plaintiff's "clinical presentation and history suggest chronic depression, cocaine dependence, reportedly in remission, and posttraumatic stress disorder due to sexual abuse." Her cognitive functioning was intact, with no impairment in reasoning or memory. Dr. Benet opined that Plaintiff 'should be able to

perform work-related mental tasks involving understanding and memory, but is likely to be moderately to severely limited in her ability to perform tasks involving sustained concentration and persistence, social interaction, and adaptation due to chronic depression and HIV-related symptoms." He suggested diagnoses of depressive disorder, PTSD, cocaine dependence (reportedly in sustained remission), and personality disorder. He recommended psychiatric/medical treatment for depression and PTSD. (R. 339-344.)

Nancy Dinwoodie, M.D., completed a psychiatric review technique on April 10, 2007. She opined that Plaintiff's mental impairments were not severe. Dr. Dinwoodie indicated Plaintiff had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 345-358.)

Steven Wise, Psy.D., completed a psychiatric review technique on October 22, 2007. He opined that Plaintiff's mental impairments were not severe. Dr. Wise indicated Plaintiff had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 389-402.)

Eftim Adhami, M.D., conducted a consultative examination of Plaintiff on December 12, 2009. He observed that Plaintiff's mental status was normal in mood, judgment, and expression. She understood questions and answers appropriately. (R. 473-474.)

Plaintiff completed three function reports demonstrating activities of daily living

such as preparing meals, cleaning, laundry, caring for pets, attending for her personal care needs, shopping, listening to music, playing cards, and going outside for brief periods of time. She needs reminders from her mother about medications and finishing things and her mother sometimes helps her with getting out of the tub and caring for her hair. (R. 129-136, 150-157, 163-170.)

    C.    **Hearing Testimony**

Plaintiff was 33 years old at the time of the administrative hearing on October 5, 2009. Plaintiff testified that her name is Jeannette Leanne Dufortin and she lives in Old Town, Florida. (R. 33.) She has her GED and did some technical training as a veterinary assistant, although she cannot do that anymore. Plaintiff testified that doctors told her she cannot work as a veterinary assistant because she is susceptible to catching illnesses that animals carry. She testified that while in prison she did some computer training. Plaintiff got out of prison in 2003. She was subsequently incarcerated for less than a year at the Hillsborough County Jail and was released in 2006. (R. 34.) Plaintiff testified that she completed a drug program in jail and has not used drugs since. Plaintiff was raped when she was 14 years old and about three months later learned that she had contracted the HIV virus. (R. 35.) Plaintiff testified that she has body aches, night sweats, and insomnia. Plaintiff testified that she gets sick easily and also has headaches, diarrhea, nausea, and vomiting. Her headaches occur every two days, lasting for 1-4 hours. She takes a Tylenol or tramadol and lays down until the headache subsides. The tramadol was prescribed for her headaches and body aches. (R. 36.) Plaintiff testified that her specialist told her she needed to cut

back on the tramadol because it might induce seizures and she has a history of seizures. Her seizures began after a 2001 car accident and she takes medication for her seizure disorder. (R. 37.)

Plaintiff complained of daily fatigue and nausea almost every day. (R. 38.) She testified that she has a lot of nightmares related to her rape as a teenager. (R. 39.) She does not spend time alone because she gets dizzy and worries that she might have a seizure. Plaintiff testified that her fear of being alone also relates to her depression. She also reported mood swings. (R. 40.) Plaintiff reported pain in lower back and legs that can last most of a morning.

Plaintiff lost her driver's license after developing her seizure disorder but recently had it restored. (R. 41.) She drives about once a week, a 20-minute roundtrip drive to the store with her mother or uncle accompanying her. Plaintiff testified that a typical day consisted of waking up, going to the bathroom, and taking her medicine. Sometimes she eats breakfast and then she watches television and when she starts to experience pain she will lay down around lunchtime. After eating lunch that her mother prepares, Plaintiff will do things around the house, such as laundry. (R. 42.) She naps in the afternoon, wakes up for dinner, bathes, takes her medications, and goes to bed again.

Plaintiff testified that she was diagnosed in 2006 or 2007 that she had hepatitis C. She gets liver ultrasounds every six months. Plaintiff complained of rashes as a result of her night sweats as well as three incidents of shingles. (R. 43.) Plaintiff takes Atripla for her HIV and Keppra for her seizure disorder. (R. 45.) She did take tramadol

but has been told to stop taking it and might find an alternative at her next appointment. (R. 45.)

## VI.  Discussion

Plaintiff argues that the ALJ erred at Step 2 of the sequential evaluation by not finding that Plaintiff's depression and PTSD were severe impairments.  At Step 2 in the sequential evaluation, the ALJ found that Plaintiff's HIV, hepatitis C, and seizure disorder were severe impairments but that Plaintiff's depression and memory problems were not severe.  (R. 19.)   The ALJ's conclusion that Plaintiff's mental impairments were not severe is supported by the substantial evidence of record.

An impairment or combination of impairments is severe at Step 2 of the sequential evaluation if it significantly limits one's physical or mental ability to do basic work activities.[21]  To be considered "severe"  a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."[22] Thus, a diagnosis of "depression" does not necessarily compel the conclusion that the condition is disabling.[23]  Although the threshold for meeting the definition of a "severe impairment" at Step 2 is low, the burden is, nonetheless, on the Plaintiff to provide evidence demonstrating the disabling impact of the mental impairments.[24]  The ALJ is

---

[21] 20 C.F.R. § 404.1520(c).

[22] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[23] 20 C.F.R. §§ 404.1520(c), 416.920(c); see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[t]here must be a showing of related functional loss" for a psychological disorder to be considered disabling).

[24] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

required to evaluate Plaintiff's mental impairments in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[25] If the degree of limitation in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, the ALJ generally concludes the mental impairment is not severe.[26]

The ALJ concluded that based on the totality of the evidence, Plaintiff had mild restrictions in activities of daily living; social functioning; and concentration, persistence, or pace. The ALJ found no episodes of decompensation. (R. 20.) Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are not severe.

Other than evaluations while incarcerated in the Florida Department of Corrections, the record reflects no psychiatric or psychological treatment. Plaintiff has never received treatment for her alleged mental impairments with psychotropic drugs. During her March 28, 2007 evaluation by Dr. Benet, he found that: Plaintiff had good eye contact; normal gait and motor activity; she was clear, coherent, and demonstrated relevant speech that was "very articulate;" she was organized and goal-directed thinking with accurate perceptions; she had adequate attention and concentration; she had average short-term memory and fair intermediate memory; she had average verbal reasoning; and she demonstrated adequate judgment and insight. Dr. Benet did note a sad and depressed mood. (R. 341.) The ALJ concluded that Dr. Benet's assessments

---

[25] 20 C.F.R. § 404.1520a(c)(3).

[26] 20 C.F.R. § 404.1520a(d)(1). *See also* <u>Cuthbert v. Astrue</u>, 303 F. App'x 697, 699 (11th Cir. 2008) (per curiam).

of depressive disorder, PTSD, personality disorder, and cocaine dependence in remission were made absent any sustained mental health treatment or long-term benefit of psychotropic medications. (R. 20.) Furthermore, Dr. Benet's report was made without conducting any psychological testing. (R. 339-344.) The ALJ concluded that Dr. Benet's suggested moderate to severe limitations with sustained concentration and persistence and social interaction were inconsistent with the rest of the evidence of record. (R. 19-20.)

The ALJ's conclusion that Plaintiff had only mild restrictions in the first three functional areas with no episodes of decompensation is supported by the findings of state agency psychological experts. Dr. Dinwoodie and Dr. Wise each opined that Plaintiff's mental impairments were not severe and that she had only mild restrictions in the first three functional areas with no episodes of decompensation. (R. 345-358, 389-402.) During Plaintiff's December 12, 2009 exam with Dr. Adhami, her mental status examination revealed that she had normal mood, judgment, and expression. Further, it was noted that Plaintiff understood questions and answered appropriately. (R. 473-474.)

The evidence also discloses that Plaintiff carried out many daily living activities, such as preparing food, shopping, caring for herself, caring for pets, shopping, cleaning, and laundry. Plaintiff also reported enjoying listening to music, watching television, playing cards, and going outside. She generally got along with authority figures and maintained social contact with others. The restrictions reported by Plaintiff in her function reports were generally related to physical pain, tiredness, and desire to

avoid exposure to illness rather than mental impairments.  (R. 129-136, 150-157, 163-170.)

The Court, therefore, concludes that the ALJ did not err in his determination that Plaintiff's mental impairments (depression, PTSD, memory loss) were not severe at Step 2 and that the ALJ's finding was supported by substantial evidence.  As substantial evidence supports the ALJ's conclusion at Step 2, it is unnecessary to address Plaintiff's argument that the ALJ erred by not determining Plaintiff's mental RFC at Step 4.

## VII.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 13th day of February 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**
**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**